**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

---

**Natasha DeLima,**

                    *Plaintiff*,

     **v.**

**Google, Inc., et al.,**

                    *Defendant.*

**Case No. 1:19-cv-00978-JL**

**Google LLC and Twitter, Inc.'s Memorandum of Points and Authorities in Support of Motion to Dismiss**

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS GOOGLE LLC,**
**AND TWITTER, INC.'S MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiff Natasha DeLima ("Plaintiff") seeks to relitigate a case decided by this Court over two years ago. In December 2017, Plaintiff brought a nearly identical complaint against these same defendants, Google LLC[1] ("Google") and Twitter, Inc. ("Twitter") (collectively, "Defendants"). *DeLima v. YouTube, Inc. et al.*, No. 1:17-cv-00733-PB, (D.N.H. 2018) (the "Prior Lawsuit"). The Prior Lawsuit involved the same allegations and claims as those found in the instant lawsuit:

- Google embezzled money Plaintiff made from ads served on her YouTube channel, hid her YouTube videos' view counts, and froze her video and subscriber counts to artificially suppress her YouTube channel's growth;

- Google, through its control of Blogger, allowed a third party to take control of her previously-controlled blogspot domain and cyber bully and defame her from that domain;

- Twitter and Google censored her accounts and deleted content from those accounts as a result of their political bias.

This Court rightly dismissed that case for failure to state a claim, which was a final judgment that Plaintiff challenged with six appeals, all of which were summarily affirmed. The Supreme Court also denied review.  Now, nearly three years after her original complaint was filed, Plaintiff wants a second bite at the apple.  The Court should not give her one. This lawsuit is barred by res judicata and should be dismissed with prejudice.

Even if this lawsuit were not barred by res judicata, Plaintiff's lawsuit should nevertheless be dismissed for failing to state a claim—the same reason her prior lawsuit was dismissed. Although the scope of Plaintiff's claims are not entirely clear, not one of Plaintiff's claims are legally viable. Most are not even valid causes of action, and Plaintiff does not and

---

[1] Plaintiff named "Google, Inc." as a Defendant in this action. But Google became an LLC in 2017 such that the appropriate entity here, and the entity represented by the undersigned counsel, is Google LLC. Google LLC joins this motion notwithstanding Plaintiff's misnomer.

cannot allege facts to support a single cause of action against Defendants. As a result, Plaintiff

fails to meet the pleading standard required by Federal Rule of Civil Procedure 8, as set forth by

*Iqbal/Twombly*. Further, to the extent Plaintiff does adequately plead any claims, those claims

arise out of Defendants' exercise of editorial discretion and are therefore barred by the

Communications Decency Act, 47 U.S.C. § 230 ("CDA") and First Amendment to the U.S.

Constitution.

## II.    BACKGROUND

### A.  Plaintiff Has Already Litigated The Issues Raised in this Lawsuit to Conclusion

On December 21, 2017, Plaintiff filed the Prior Lawsuit against Defendants and various

other technology companies. *DeLima v. YouTube, Inc. et al*, No. 1:17-cv-00733-PB, (D.N.H.

filed Dec. 21, 2017). She filed an amended complaint in the Prior Lawsuit on August 17, 2018.

*Id.* (D.N.H. filed Aug. 17, 2018), ECF No. 131; *see also* Defs.' Req. for Judicial Notice [ECF

No. 11], Ex. A (hereinafter "Prior Complaint"). On August 30, 2018, the Magistrate Judge issued

a lengthy and detailed recommendation that the Prior Lawsuit be dismissed for failing to state a

claim. *Id.*, (D.N.H. filed Aug. 30, 2018), ECF No. 144; Defs.' Req. for Judicial Notice, Ex. B

(hereinafter "R&R"). And on September 18, 2018, the Court issued a final judgment in

Defendants' favor, dismissing the Prior Lawsuit. *Id.*, (D.N.H. filed Sept. 18, 2018), ECF

No. 147; Defs.' Req. for Judicial Notice, Ex. C (hereinafter "Prior Dismissal").

In the Prior Lawsuit, the Magistrate Judge liberally construed Plaintiff's Prior Complaint

to have asserted the following claims:

- Violations of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1) ("FLSA"), by failing to pay Plaintiff minimum wage;

- Embezzlement of money earned by Plaintiff on the defendants' internet platforms as well as other unspecified criminal activity with regard to Plaintiff's use of those platforms;

- Violations of Plaintiff's First Amendment right to free speech, and engaging in viewpoint discrimination by (1) censoring the content Plaintiff posted on defendants' internet platforms; (2) denying Plaintiff access to the defendants' internet platforms; and (3) requiring that Plaintiff agree to "Terms of Service" which allowed defendants to curtail her free speech rights;

- As to Blogspot.com and Google, violations of Plaintiff's civil rights and engaging in the "crime of cyberbullying" by allowing someone to reuse a domain name Plaintiff purchased, but ceased to use, to (1) defame, libel, slander, harass, bully, demeans, ridicule, and lie about Plaintiff, and (2) infringe upon Plaintiff's copyright in the domain name;

- Improperly forcing Plaintiff to consent to "Terms of Service," and changes to those Terms, in violation of Federal laws, civil rights, and "virtual property rights"; and

- Stalking Plaintiff, placing false strikes on Plaintiff's accounts, closing or shuttering Plaintiff's accounts, locking Plaintiff out of her accounts, denying Plaintiff the use of her "virtual property," and attempting to stop people from viewing, accessing, or following Plaintiff's accounts, including by engaging in "shadowbanning" and manipulating data relating to her accounts.

R&R at 6-7.[2]

The Magistrate Judge's R&R recommended that each of those claims be dismissed as not cognizable or alternatively barred by the CDA. R&R, *passim*. The District Court adopted the R&R on September 18, 2018, over Plaintiff's objections, dismissed Plaintiff's claims, and denied her requests for preliminary and equitable relief. Prior Dismissal at 1. Plaintiff then filed six appeals in the United States Court of Appeals for the First Circuit,[3] and the First Circuit summarily affirmed the judgment of this Court. *See DeLima v. YouTube, Inc. et al.*, No. 18-1666, 2019 WL 1620756 (1st Cir. Apr. 3, 2019), ECF No. 00117421809; Defendant's Request for Judicial Notice, Ex. D. Plaintiff filed a petition for writ of certiorari in the Supreme Court of the

---

[2] In the Prior Lawsuit, Plaintiff filed a First Amended Complaint on May 23, 2018 (ECF No. 73), and Defendants timely filed a Motion to Dismiss that First Amended Complaint (June 6, 2018, ECF No. 95). Before the Court ruled on Defendant's Motion to Dismiss, Plaintiff filed the same complaint again on August 17, 2018, which the Court referred to as the operative complaint for purposes of its Report and Recommendation and which this Motion refers to as the "Prior Complaint" throughout. *See* R&R at 1.

[3] Plaintiff's six appeals were consolidated under Case No. 18-1666. *See* Order of Court, *DeLima v. YouTube, Inc. et al.*, No. 18-1666 (1st Cir. Jan. 7, 2019), ECF No. 00117385231.

United States, which was denied on November 25, 2019. *DeLima v. YouTube, Inc. et al.*, 140 S. Ct. 555 (2019); Defendant's Request for Judicial Notice, Ex. E.

### B.  Plaintiff's Lawsuit is Nearly Identical to Her Prior Lawsuit

On September 17, 2019, while her petition for a writ of certiorari was still pending, Plaintiff attempted to resuscitate her claims by filing this lawsuit. Google and Twitter were never served with Plaintiff's first complaint in this litigation. On May 22, 2020, Plaintiff filed a motion to amend and attached her proposed First Amended Complaint [ECF No. 4]. Leave was granted, and her First Amended Complaint (hereinafter the "Complaint") was filed June 2, 2020 [ECF No. 5]. Google was served the Complaint via certified mail postmarked August 18, 2020, by the U.S. Marshals Service. To its knowledge, Twitter has not been served.

Like her Prior Complaint, the Complaint "contains no clear narrative and is difficult to understand." R&R, at 3. Nevertheless, the Complaint is essentially identical to the Prior Lawsuit. Plaintiff continues to allege that Google, through its operation of YouTube and Blogger, has suppressed views of her content and withheld revenues she believes she has earned through her posting of content on those platforms. And Plaintiff continues to allege that Google and Twitter remove her content and suspend her accounts as a result of political bias or, as she repeats several times throughout the Complaint, because of "speech they hate." As set forth in the chart in Section III.B.2 below, the parallels between the two lawsuits are readily apparent.

Because cognizable causes of action have not been pleaded in either this or the Prior Lawsuit, comparing claims remains difficult. But regardless, the core of operative facts remain unchanged between this and the Prior Lawsuit. Defendants now move to dismiss.

## III.    ARGUMENT

### A.  Legal Standards on a Motion to Dismiss

#### 1.  Res Judicata

Defendants' res judicata defense is appropriately analyzed under Federal Rule of Civil Procedure 12(b)(6). *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003); *see also Katz v. McVeigh*, No. 15-cv-338-LM, 2015 WL 7016334, at *3 (D.N.H. Nov. 12, 2015) ("A claim that is barred by res judicata is not a 'plausible claim upon which relief may be granted.'"). "Federal law determines whether an earlier judgment, rendered in federal court, bars the maintenance of a subsequent federal court action." *In re Colonial*, 324 F.3d at 16 (citation omitted). Res judicata warrants dismissal under Rule 12 where: (1) the facts that establish the defense are "definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice"; and (2) "the facts so gleaned [] conclusively establish the affirmative defense." *Id*.

#### 2.  Failure to State a Claim and Standard for Pro Se Pleadings

In addition, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). This requires Plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Tringali v. Mass. Dep't of Transitional Assistance*, No. 12-cv-124-PB, 2012 WL 5683236, at *4 (D.N.H. Nov. 13, 2012) (dismissing pro se plaintiff's claims because "she has not pleaded sufficient facts" in support). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678. And Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Although complaints by pro se litigants receive a "deferential reading," "'bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like need not be credited.'" *Hecking v. Barger*, No. 1:08-cv-490-JL, 2010 WL 653553, at *1 (D.N.H. Feb. 23, 2010) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). Further, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997); *see also Every v. Dep't of Veterans Affairs*, No. 15-cv-177-LM, 2016 WL 107947, at *1 (D.N.H. Jan. 8, 2016) (dismissing pro se complaint and explaining that "[t]he central problem with [the] complaint is that there are insufficient facts to piece together any sort of coherent narrative").

Lastly, courts can dismiss a pro se complaint with prejudice, even *sua sponte*, "[w]here the allegations in the complaint, viewed in the light most favorable to plaintiff, 'are patently meritless and beyond all hope of redemption,' i.e., where it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile[.]'" *Green v. Concord Baptist Church*, 313 Fed. App'x. 335, 336 (1st Cir. 2009). This is appropriate where the "claims [are] based on indisputably bogus legal theories or delusional factual scenarios." *Id.*; *see also Every*, 2016 WL 107947, at *1 (dismissing pro se complaint and explaining that "[t]he central problem with [the] complaint is that there are insufficient facts to piece together any sort of coherent narrative").

### B.  Plaintiff's Lawsuit Should be Dismissed Because it is Barred by Res Judicata

As a preliminary matter, Plaintiff's lawsuit cannot proceed because it is barred by res judicata. Under that doctrine, "a final judgment on the merits of an action precludes the parties or their privies from litigating issues that were or could have been raised in that action." *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980). "[T]he elements of a res judicata defense are (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *In re Colonial*, 324 F.3d at 16. Because this suit satisfies each of those elements, it should be dismissed with prejudice.

1. <u>There was a final judgment on the merits in an earlier proceeding involving identical parties</u>

The first and third res judicata elements cannot be disputed. The same parties currently involved in this action litigated the Prior Lawsuit. *Compare* Complaint [Doc. 5] (naming Google and Twitter as defendants) *with* Prior Complaint, at 3 ("DeLima asserts claims against defendants Google LLC; Twitter, Inc.; YouTube, LLC….") (parentheticals omitted). The Court dismissed the Prior Lawsuit for failure to state a claim. *See generally* R&R (evaluating nearly a dozen claims and determining that "DeLima has not stated any claim upon which relief might be granted"); Prior Dismissal (approving the R&R and dismissing the Prior Lawsuit). Dismissal of a suit for failure to state a claim is "plainly a final judgment on the merits." *Airframe Sys's, Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010). It is also a dismissal with prejudice. *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004) ("in the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice.") (citations omitted), *abrogated on other grounds by Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008).

Each of Plaintiff's appeals to the First Circuit were unsuccessful, *DeLima v. YouTube, Inc., et al.*, No. 18-1666, 2019 WL 1620756 (1st Cir. Apr. 3, 2019), as was Plaintiff's petition for writ of certiorari in the Supreme Court of the United States. *DeLima v. YouTube, Inc., et al.*, 140 S. Ct. 555 (2019). The finality of that judgment therefore cannot be questioned. *See, e.g., United*

*States v. Munsingwear, Inc.*, 340 U.S. 36, 37-38 (1950) (holding that where judgment is reviewed and upheld on appeal, relitigation of that judgment by subsequent case "falls squarely within the classic statement of the rule of res judicata"); *see also Hacienda Records., L.P. v. Ramos*, 718 F. App'x 223, 237 (5th Cir. 2018) (Dennis, C.J., concurring) (citing *Munswingwear*, 340 U.S. at 39-41 as "holding that the final judgment of a district court retains preclusive effect after appeal when that appeal is dismissed without vacating the judgment below").

    2.   <u>Plaintiff asserts the exact same claims that were dismissed in the Prior Lawsuit</u>

In evaluating the similarity of claims for res judicata analysis, the First Circuit "does not focus on the labels or sources for the plaintiff's causes of action but instead considers whether the underlying factual bases for the causes 'are related in time, space, origin or motivation.'" *Silva v. City of New Bedford*, 660 F.3d 76, 79 (1st Cir. 2011) (quoting *Airframe*, 601 F.3d at 15). The First Circuit "find[s] the required relationship 'if both sets of claims-those asserted in the earlier action and those asserted in the subsequent action-derive from a common nucleus of operative facts.'" *Id.* (quoting *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1st Cir. 1994)).

Plaintiff's claims and allegations here—while unclear—duplicate those from the Prior Lawsuit:

| Common Allegation | Quotes from the Prior Complaint | Quotes from the Complaint |
|---|---|---|
| Google/YouTube Have Failed to Properly Pay Plaintiff | "YouTube/Google keep this figure secret so that they get to continue . . . not paying earnings to people." Prior Complaint, at 5. | "Google owes the Plaintiff . . . for keeping the monetization she earned . . . and failing to allow her earnings." Complaint at 5.<br><br>"YouTube owes the Plaintiff all of her earnings from 2018 & 2019, & her right to use monetization without harassment." Complaint at 6. |

|  | "The Plaintiffs seek compensation due them [. . .]." Prior Complaint, at 8. | "Twitter . . . owe[s] her compensation for all that they continue to do on her virtual property [. . .]." Complaint at 6. |
|  | "Google parent company of YouTube harasses demeans, manipulates data and figures of popular channels, for the purposes of embezzlement [. . .]." Prior Complaint, at 2. | "[Defendants] have embezzled monetization from her newer domain [...]." Complaint at 2. |
|  | "YouTube has embezzled 100% of the monetization." Prior Complaint, at 4. | "YouTube embezzles revenue [. . .]." Complaint at 3. |
|  | "[W]hat YouTube/Google do is constantly embezzle more as channels grow and earn more, they cut down payments to demean channel owners." Prior Complaint, at 5. | "If they pay $1,200 for a month, the next month, they cut that in half, then gradually reach $1,000 again, and the next month, cut it again, depriving all owners their rights to the money their channel earns." Complaint at 2. |
| Google, YouTube, and Twitter Manipulate Views to Restrain the Growth and Popularity of Plaintiff's Accounts | "YouTube and Google try to hide videos, and entire channels, and they go in and delete millions of views so that the videos do not rank, and are hard to find. They 'freeze' all video counts and subscriber counts in order to alter channel growth." Prior Complaint, at 6. | "YouTube and Google hack & try to reverse so that people don't see channel popularity and growth." Complaint at 2. |
|  | "Google worked with the Democrats, and Hillary Clinton to manipulate and hide data." Prior Complaint, at 2. | "The Parent Company Google has admitted that they do indeed tamper with algorithms, content, views, subscriber count, etc. for the company YouTube. They also tamper with their own web browser, to actually hide articles [. . .]." Complaint at 1. |
|  | Twitter "destroys the growth of that account, they have deleted followers and locked the Plaintiff Natasha out of her own property and cannot." Prior Complaint, at 7. | "Tweets are hacked, they delete notifications, when they cannot legally have a hacker inside accounts and destroying the people that want to converse with each other." Complaint at 3. |

| | | |
|---|---|---|
| Defendants Censor Plaintiff's Accounts | "Twitter, and Google have manipulated and been caught doing 'shadowbanning' (censorship) and deleting content that is lawful based on political bias, and they therefore are in violation of Civil rights, Free Speech, and Plaintiffs rights to use the internet." Prior Complaint, at 2. | "They have also shadow banned her account far worse than previously, and try to limit who can see her content at all." Complaint at 3.

"Twitter never ceased their illicit censorship, even at the level of the US President." Complaint at 5. |
| | Google is "still targeting people on a 'political basis." Prior Complaint, at 2. | "[Google] discriminate[s] against the majority of the channels." Complaint at 3. |
| Terms of Service Violate Civil Rights | Defendants "institute 'terms of service' which violate . . . civil rights." Prior Complaint, at 2. | "YouTube consistently 'changes the term' which is illicit discrimination." Complaint at 2. |
| Google Permitted a Third Party to Obtain and Utilize Her Blog Domain | "BlogSpot has allowed for someone to 'recycle' the Plaintiffs virtual property and use it to harass, demean, lie about, defame, and libel Plaintiff [. . .]" "[Blogspot] would be obligated under copyright law for the purchased domains to not be 'recycled', they would be put into 'internet trash' and not allow for this type of criminal harassment and bullying to occur, in violation of civil rights, and misuse of domains." Prior Complaint, at 7. | "Google, cannot disconnect the Plaintiffs domain, http://www.natashanothingbutthetruth.com/ which she owns & renews every October. They owe her compensation for destroying her work [. . .]." Complaint at 5. |
| The Third Party Operating a Blog Domain Is Defaming Her | "Google chooses to allow for a 'fake profile' . . . and is in fact complicit in aiding for a total manipulation of truth to be contained in their internet domain, solely for the purpose of the spread of disinformation, and targeting individuals." Prior Complaint, at 2. | "The Plaintiff has a right to have her fake profile removed, which Google themselves have manipulated and created, and allowed the Plaintiff to be falsely described." Complaint at 3.

"Google must remove the Fake Profile, & all links that demean her character. Even in the UK, this is illegal, and against the tort law, of |

| | | Slander, Defamation, and Libel, as well as 11 ED & 28 US Code S 4101 [. . .]." Complaint at 6. |
| --- | --- | --- |

Plaintiff's only new addition is a vague claim of emotional distress in connection with her allegations of lost revenue, but these are mere restatements of her prior claims, derived from a common nucleus of operative facts. That minor alteration in relief theory does not prevent res judicata dismissal as it arises out of the same demonetization claims of the Prior Lawsuit. *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 57 (1st Cir. 2004) (type of relief sought does not factor into determining whether claims are barred by res judicata); *Harihar v. U.S. Bank Nat'l Ass'n*, No. 15-CV-11880-ADB, 2017 WL 1227924, at *11 (D. Mass. Mar. 31, 2017), *aff'd sub nom. Harihar v. US Bank N.A.*, No. 17-1381, 2018 WL 7360636 (1st Cir. Aug. 7, 2018) (that plaintiff sought additional forms of relief did not change the preclusive effect of prior judgment).

Plaintiff has also added two mentions of the Sherman Act without explaining the Sherman Act's relevance to this lawsuit. Notwithstanding, because all of the factual allegations in the Complaint are repetitive of the Prior Lawsuit, any "Sherman Act" claim remains barred by res judicata. *Silva*, 660 F.3d at 79 (res judicata barred claims, including new claims added in second suit, where both lawsuits arose from the same incident).

Because this Court previously dismissed identical claims between identical parties, this action should be dismissed under principles of res judicata.

### C.  Plaintiff Fails to Adequately Allege Any Viable Claims

Regardless of res judicata, Plaintiff fails to plead any facts sufficient to state a cognizable claim. Plaintiff's first cause of action is that Defendants' deletion of content "is against Civil Rights, V11, the Sherman Act, and Fair Use laws, 28 US Code S 4101, IIED, compensation for emotional distress." [ECF No. 5, at 5.] Plaintiff's second cause of action alleges that Google

"disconnect[ed]" her "domain," http://www.natashanothingbutthetruth.com, and that Google

therefore "owe[s] her compensation for destroying her work & then libeling her name." [ECF

No. 5, at 5.] Plaintiff's third and fourth causes of action allege that Google has withheld earnings

from Plaintiff related to her blog at natashanews18.blogspot.com and her YouTube channel, and

Google is "hiding the people that go into" her blog.

Affording Plaintiff the most liberal reading, Defendants understand Plaintiff to be arguing

that Defendants' content moderation decisions: (1) violated Plaintiff's "Civil Rights;" (2)

violated Plaintiff's First Amendment rights and censored her; (3) defamed her; (4) violated her

"right to payment" and "virtual property rights"; (5) violated the Sherman Act and unspecified

antitrust laws; (6) violated fair use; and (7) subjected her to intentional infliction of emotional

distress.[4] None of these claims can stand.

1.   The Court Should Dismiss Plaintiff's Civil Rights Claims

Plaintiff has not explained how Google or Twitter, by taking down her blogs, suspending

her Twitter account, or "freezing" her YouTube channel, has violated Plaintiff's "civil rights" or

otherwise violated the law or Constitution. To the extent that such claims require a showing of

state action, Plaintiff has not made that showing. R&R, at 9 ("Defendants are all private

companies. Plaintiff has failed to allege any state action giving rise to the alleged violations of

her First Amendment rights"); *Casterlow-Bey v. Google Internet Search Engine Co.*, No. 3:17-

cv-05621-RBL-JRC, 2017 WL 6876215, at *1 (W.D. Wash. Sept. 26, 2017), *report and*

---

[4] Plaintiff also mentions, in the first paragraph of her Complaint, a "right to be forgotten" that appears again only when Plaintiff adds an errant link to a BBC article entitled "Google loses 'right to be forgotten' case" related to a 2018 ruling in the European Union. To the extent Plaintiff is attempting to pursue a similar legal theory here, she fails to state a claim for at least two critical reasons. First, because the "right to be forgotten" is a legal concept related to a person's right to be removed from online directories, Plaintiff has not articulated how that "right" is implicated here, as she does not appear to want to be "forgotten." Second, "such a 'right to be forgotten,' although recently affirmed by the Court of Justice for the European Union, is not recognized in the United States." *Garcia v. Google, Inc.*, 786 F.3d 733, 745-46 (9th Cir. 2015).

*recommendation adopted*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6882978 (W.D. Wash. Oct. 23, 2017) ("[Google] is not a state actor and so is not liable under § 1983" of the Civil Rights Act).

    2.   <u>The Court Should Dismiss Plaintiff's First Amendment and "Censorship"</u>
             <u>Claims</u>

      For the same reasons discussed above, Plaintiff has failed to allege a First Amendment violation. Defendants are private companies, not state actors. R&R, at 9 ("Defendants are all private companies. DeLima has failed to allege any state action giving rise to the alleged violations of her First Amendment rights"). Plaintiff's First Amendment and "censorship" allegations also fail. *McGuire v. Reilly*, 386 F.3d 45, 60 (1st Cir. 2004) ("Obviously, only the government can violate First Amendment rights: every First Amendment claim thus requires state action in some sense.").

    3.   <u>The Court Should Dismiss Plaintiff's Defamation Claims</u>

      Plaintiff cannot maintain a defamation claim pursuant to 28 US Code §4101. To do so, she would need to allege that (1) Defendants communicated defamatory material and (2) that Defendants knew such statements to be false, or otherwise acted in reckless disregard or negligently in failing to ascertain the truth of such statements. *McCarthy v. Manchester Police Dep't*, 168 N.H. 202, 210 (2015) (citations omitted). Plaintiff has not alleged that any Defendant has made any defamatory statement.

      Plaintiff's "libel" claim fails for the same reason: she fails to identify any defamatory materials communicated by Defendants. *Id.* (the tort of defamation consists of libel and slander).

4.  The Court Should Dismiss Plaintiff's "Right to Payment" and "Virtual
    Property" Claims

Plaintiff's demand for owed "compensation" alleged in her third cause of action (to the

extent it departs from her defamation claim) fails because Plaintiff does not articulate a legal

theory upon which "compensation" could be granted. Plaintiff's allegations against YouTube in

her fourth cause of action fail for the same reasons. In other words, Plaintiff has merely made a

factual allegation that Google and YouTube disconnected her domains, but has not articulated

how that would entitle Plaintiff to any relief. Google and YouTube are not obligated to pay

Plaintiff for her content unless that obligation arises, for instance, out of contract or some other

property right. Because Plaintiff has failed to articulate a theory for relief, these causes of action

should be dismissed.

5.  The Court Should Dismiss Plaintiff's Antitrust and Sherman Act Claims

While Plaintiff mentions the "Sherman Act," Defendants cannot ascertain why that Act is

referenced in the Complaint. Even under the most liberal reading of the Complaint, there is no

indication that Plaintiff believes Defendants to have engaged in anti-competitive behavior. As a

result, it warrants dismissal. *See Twombly*, 550 U.S. at 555 (holding that an alleged violation of

Section 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to

suggest that an agreement was made" with competitors to engage in anticompetitive behavior);

*see also Americana Indus., Inc. v. Wometco de Puerto Rico, Inc.*, 556 F.2d 625, 627 (1st Cir.

1977) ("we are unable to discern a Sherman Act claim in the pleaded facts. We therefore affirm

the dismissal under Fed. R. Civ. P. 12(b)(6)").

6.  The Court Should Dismiss Plaintiff's "Fair Use" Claims

Plaintiff's cursory citation to "Fair Use" laws does not state a claim upon which relief

could be granted. "Fair use" is a *defense* to trademark and copyright infringement claims. *See*

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, No. 17-cv-747-LM, 2018 WL

6519070, at *5 (D.N.H. Dec. 11, 2018) ("'Fair use' is a statutory affirmative defense to a

trademark infringement claim.") (citations omitted); *Harper & Row Publ'rs v. Nation Enters.*,

471 U.S. 539, 549 (1985) (discussing Copyright Act's codification of copyright fair use defense).

Defendants are not aware of any cognizable claim for violation of "Fair Use" laws.

### 7.  The Court Should Dismiss Plaintiff's Intentional Infliction of Emotional Distress Claims

Plaintiff cannot maintain an intentional infliction of emotional distress (IIED) claim

because she has not identified any conduct "so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." *Moss v. Camp Pemigewassett, Inc.*, 312 F. 3d 503, 511

(1st Cir. 2002) (quoting Restatement (Second) of Torts § 46, cmt. d (1977)) (additional citations

omitted). To the contrary, she has alleged only that Google and Twitter have engaged in

publisher conduct: removing content from and choosing advertisers for their respective

platforms.

### 8.  Plaintiff's Requests for Injunctive Relief Must Fail

In Paragraphs 19 and 20 of her Complaint, Plaintiff repeats her unsupported claims of

"virtual property rights" deprivations, civil rights violations, and defamation, all addressed

above. But she separately asks that Twitter cease "account hacking, and deleting notifications

and followers" and that Google remove an unspecified "Fake Profile" and "all links that demean

her character." To the extent that the Court construes these paragraphs as requests for injunctive

relief, they should be denied. "A plaintiff seeking a preliminary injunction must establish that

[s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the

absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015). Because Plaintiff has no

likelihood of succeeding on the merits of any of her claims, and she cannot meet the other

requirements for injunctive relief, her requests for injunctive relief should be denied. *See* R&R,

at 18-19 (recommending that DeLima not be granted injunctive relief because she failed to state

any claim upon which relief could be granted).

### D. The Communications Decency Act and First Amendment Bar Plaintiff's Claims

This action should also be dismissed because Section 230 of the Communications

Decency Act 47 U.S.C. § 230(c)(1) and the First Amendment bar Plaintiff's attempts to hold

Defendants liable for exercising their editorial discretion.

#### 1.  The Communications Decency Act Bars Plaintiff's Claims

At the heart of each of Plaintiff's claims is the allegation that Defendants removed her

content from their respective platforms. The CDA protects Defendants from being sued for those

editorial decisions. *See* 47 U.S.C. § 230(c)(1); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478

F.3d 413, 418-22 (1st Cir. 2007) ("*Lycos*").[5] This Court previously found that the CDA bars

Plaintiff from bringing identical and nearly identical claims against Defendants. R&R, at 10-11.

The result should be the same here.

Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive

computer service shall be treated as the publisher or speaker of any information provided by

another information content provider." 47 U.S.C. § 230(c)(1). Section 230's preemption

---

[5] The CDA similarly shields Defendants from injunctive relief based on those barred claims. *See, e.g., Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 540 (E.D. Va. 2003), *aff'd*, No. 03-1770, 2004 WL 602711 (4th Cir. 2004) ("[G]iven that the purpose of § 230 is to shield service providers from legal responsibility for the statements of third parties, § 230 should not be read to permit claims that request only injunctive relief. After all, in some circumstances injunctive relief will be at least as burdensome to the service provider as damages, and is typically more intrusive."); *Hassell v. Bird*, 5 Cal. 5th 522, 541 (2018) (finding that CDA immunity would shield an interactive computer service from injunctive relief sought by a plaintiff).

provision further states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. § 230(e)(3). Under the CDA, a suit that seeks to block "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under Section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com*, *LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc) ("*Roommates*").

    "[W]hat matters is not the name of the cause of action—[but] whether the cause of action inherently requires the court to treat the defendant as the publisher or speaker of the content provided." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009). "[C]ourts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker. If it does, section 230(c)(1) precludes liability." *Id*. Therefore, courts apply CDA immunity broadly "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Roommates,* 521 F.3d at 1175. Indeed, First Circuit courts take an expansive view of Section 230's protections and the immunity that it confers on providers like Defendants. *Lycos*, 478 F.3d at 419. That expansive Section 230 protection is critical to avoid the "obvious chilling effect" on speech that intermediary liability would impose on internet platforms such as Twitter, YouTube, or Blogger. *Id.* at 418–19 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)).

    CDA immunity applies so long as a provider can establish that it is (1) an interactive computer service, (2) the content was created by another "information content provider, and (3) the claims treat the provider as the "publisher" or "speaker [of the content]." *Barnes*, 570 F.3d at 1100-01 (citation omitted). Here, the CDA bars Plaintiff's suit because Defendants are (1) "interactive computer service[s]," (2) Plaintiff is the "information content providers" because her

18

accounts and content are at issue, and (3) Plaintiff's claims treat Defendants as the "publisher" or "speaker."

<em>a.    Defendants are interactive computer services</em>

An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . ." 47 U.S.C. § 230(f)(2).[6] As numerous courts have found, including this Court, Defendants easily meet the definition of an "interactive computer service" with respect to the services at issue in this litigation because those services enable their users to communicate on an online platform. *See,* R&R, at 11 (recognizing that Google and Blogspot.com qualify as ICS's) (citing *Weerahandi v. Shelesh*, No. 3:16-CV-06131-BRM-TJB, 2017 WL 4330365, at *6, (D.N.J. Sept. 29, 2017)); *Lancaster v. Alphabet Inc.*, No. 15-CV-05299-HSG, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (YouTube and Google are ICS's); *Mezey v. Twitter, Inc.*, No. 1:18-CV-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (holding that Twitter is an interactive computer service); *Twitter, Inc. v. Brittain*, No. 19-cv-00114-YGR, 2019 WL 2423375 at *2 (N.D. Cal. June 10, 2019) (granting Twitter's motion to dismiss under the CDA); *Dehen v. Does 1-100*, No. 17cv198-LAB (WCG), 2018 WL 4502336, *3 (S.D. Cal. Sept. 19, 2018) (same); *Frenken v. Hunter*, No. 17-cv-02667-HSG, 2018 WL 1964893, *2 (N.D. Cal. Apr. 26, 2018) (same); *Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 104 (D.D.C. 2016) (same); *see also Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 473 (E.D.N.Y. 2011) (concluding that "a website falls within this definition.").

---

[6] An "access software provider" is a "provider of software … or enabling tools that … filter, screen, allow, or disallow content; [] pick, choose, analyze, or digest content; or [] transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content." *Id.*, § 230(f)(4).

>> b.     *The content was posted by another information content provider*

It is also beyond dispute that Defendants did not create the relevant content. Plaintiff is the "information content provider" for any claims related to her accounts and content. To the extent that Plaintiff alleges defamation for a third party's descriptions of Plaintiff on Google or Blogspot, that content is provided by a separate information content provider, not Google. Therefore, Plaintiff or third party users are the "information content providers" under the CDA. 47 U.S.C. § 230(c)(1); *accord Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) ("third-party content" is "content created entirely by individuals . . . other than the interactive computer service provider") (citation omitted); *see also Gavra v. Google, Inc.*, No. 5:12-CV-06547-PSG, 2013 WL 3788241, at *2, n.22 (N.D. Cal. July 17, 2013) (Google not an information content provider where it was "undisputed" that the content was created by a third-party).

>> c.     *Plaintiff's claims treat Defendants as publishers*

Plaintiff's claims seek to hold Defendants liable for performing a publisher's traditional editorial functions. *See, e.g., Hiam v. HomeAway.com, Inc.*, 267 F. Supp. 3d 338, 346 (D. Mass. 2017), *aff'd*, No. 17-1898, 2018 WL 17558, *aff'd*, 887 F.3d 542 (1st Cir. 2018) (citations omitted) ("website construction and operation, including a website operator's decisions about how to treat postings generally," are traditional editorial functions); *Roommates*, 521 F.3d at 1170-71 (removal decisions relating to third-party content are "perforce immune under section 230"); *Brittain*, 2019 WL 2423375 at *3 (citing the same); *see Barnes*, 570 F.3d at 1103 ("[R]emoving content is something publishers do").

Specifically, Plaintiff targets Defendants' decisions regarding content removal, closing accounts, and whether and how to allow advertising to appear on Plaintiff's YouTube channel. *See generally* [ECF No. 5] (complaining that Google "froze" Plaintiff's YouTube channel and

"blacklisted" Plaintiff from obtaining increased viewership and complaining that Twitter gave

her "false reasons" to shut down her account). In fact, Plaintiff alleges that the platforms are

"'gatekeepers' of what information they want the public to access." [ECF No. at ¶ 3.] This is

precisely the conduct that the CDA is intended to immunize. *See, e.g., Klayman v. Zuckerberg*,

753 F.3d 1354, 1359 (D.D.C. 2014) ("Indeed, the very essence of publishing is making the

decision whether to print or retract a given piece of content—the very actions for which

Klayman seeks to hold Facebook liable."); *Goddard*, 640 F. Supp. 2d at 1201-02 (Google's

policies regarding publication of third-party ads were a publisher function covered by Section

230(c)(1)). Having satisfied each of the three requirements, Defendants are immune under

Section 230(c)(1). *See Lancaster*, 2016 WL 3648608, at *3 (dismissing with prejudice under the

CDA all of plaintiff's claims based on YouTube's removal of plaintiff's videos from its service);

S*ikhs for Justice*, 144 F. Supp. 3d at 1094 (dismissing with prejudice claims against Facebook

based on Facebook's alleged blocking of user content); *Frenken*, 2018 WL 1964893, at *3

(dismissing with prejudice pro se plaintiff's claims against Twitter based on the content of third

party's Tweets).

And because Plaintiff cannot plead around CDA immunity, Plaintiff's Complaint should

be dismissed without leave to amend. *See, e.g.*, *Frenken*, 2018 WL 1964893, at *4 (dismissing

*pro se* plaintiff's complaint against Twitter without leave to amend because the claims were

barred by the CDA); *Mezey*, 2018 WL 5306769 at *1-2 (same); *Dehen*, 2018 WL 4502336 at *4

(same).

### 2.  The First Amendment Bars Plaintiff's Claims

Plaintiff's claims are also barred by the First Amendment. Each of the Defendants has a

constitutionally protected right to decide which speech to allow on its platform. *See, e.g.*,

*Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630–31 (D. Del. 2007) (claims dismissed against

Google for its "editorial decisions" regarding third-party content as precluded by the First Amendment and CDA); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (collecting cases and holding that Facebook has a "First Amendment right to decide what to publish and what not to publish on its platform"); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 435 (S.D.N.Y. 2014) (dismissing case where relief sought would violate search engine's First Amendment rights).[7] This includes whether and how to allow advertising. *Cf. Langdon*, 474 F. Supp. 2d at 629 (holding that the First Amendment barred plaintiff's demand that Google display Plaintiff's advertisements in Google search results because it would "compel [Google] to speak in a manner deemed appropriate by Plaintiff and would prevent Google from speaking in ways that Plaintiff dislikes").

In short, Plaintiff's attempt to hold Defendants liable for decisions to exclude speech by suspending accounts, removing content, restricting advertising, or allocating a domain "cannot be squared with the First Amendment." *Baidu*, 10 F. Supp. 3d at 443. Furthermore, because Plaintiff cannot cure this fundamental flaw through amendment, her claims must be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons above, Google and Twitter respectfully request that the Court dismiss Plaintiff's claims with prejudice.

---

[7] Other content hosts, such as cable TV operators and newspapers, receive this protection. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 636 (1994) ("[B]y exercising editorial discretion over which stations or programs to include in its repertoire, cable programmers and operators seek to communicate messages on a wide variety of topics and in a wide variety of formats.") (internal quotation marks and citation omitted); *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (newspaper not required to publish op-ed columns it disagrees with).

Respectfully submitted,

**Google LLC** and **Twitter, Inc.**

By their attorneys,

ORR & RENO, PROFESSIONAL ASSOCIATION

Dated:  September 8, 2020          By:          */s/ Jonathan M. Eck*
                                               Jonathan M. Eck, Esq. (NH Bar #17684)
                                               Orr & Reno, Professional Association
                                               45 S. Main Street, P.O. Box 3550
                                               Concord, NH  03302
                                               (603) 223-9100
                                               jeck@orr-reno.com

## CERTIFICATE OF SERVICE

I, Jonathan M. Eck, certify that on this date service of the foregoing document was made upon the Plaintiff, *pro se*, via First-Class U.S. Mail to 192 Roxbury Street #1, Keene, New Hampshire 03431 and via email to Natasha4NHGov@protonmail.com.

Dated:  September 8, 2020                  */s/ Jonathan M. Eck*
                                           Jonathan M. Eck, Esq. (NH Bar #17684)