UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Natasha DeLima

     v.                                            Civil No. 1:19-cv-978-JL
                                                       Opinion No. 2021 DNH 025P
Google, Inc. and Twitter, Inc.


**MEMORANDUM ORDER**

     Pro se Plaintiff Natasha DeLima has sued Google[1] and Twitter[2] over the companies'

oversight of social media accounts that DeLima runs on their platforms.  While the precise

contours of DeLima's claims are not clear, she alleges generally that Defendants violated the

Copyright Act and "fair use" laws, the Sherman Antitrust Act, and unspecified civil rights

statutes, owe her unpaid earnings, tampered with and violated her "virtual property rights,"

defamed her, and intentionally inflicted emotional distress upon her.  DeLima's central factual

allegation is that Defendants have effectively censored her YouTube channels, Google blogs,[3]

and Twitter accounts, resulting in a loss of alleged revenue she had been receiving from these

platforms.  This court has jurisdiction under (diversity) because DeLima is a resident of New

---

[1] DeLima named "Google, Inc." as a defendant, but Google became an LLC in 2017 and Google LLC joined this suit despite DeLima's misnomer.  See Doc. 10-1, at 2 n. 1.  Google is a technology company that offers a variety of internet-related services and products to the public. Google's services include a search engine, while its products include online advertising technologies and other software and hardware.

[2] Twitter is a social networking and "microblogging" service where users interact with each other through short messages called "tweets." Tweets are used to write limited-character messages, or re-send other messages or information through links, photographs, or videos.

[3] A blog is an online journal or information website where a single user or group of users can share information or opinions through "posts" on the site.  Blogs often display information in reverse chronological order, with the latest posts appearing first, at the top of the web page.

Hampshire, Defendants have principal places of business in California, and the amount in controversy exceeds $75,000.

Defendants move to dismiss all claims under Rule 12(b)(6), and in the alternative, move to transfer the case to the Northern District of California due to forum selection clauses in the social media platforms' terms of service.  As grounds for dismissal, Defendants argue:  (1) that the current lawsuit is barred by res judicata as a result of a judgment in a similar 2017 lawsuit; (2) if not barred by res judicata, the claims nonetheless fail because most are not valid causes of action and the rest are unsupported by any factual allegations; and (3) to the extent any claims are adequately plead, they all arise out of Defendants' exercise of editorial discretion and barred by the Communications Decency Act, 47 U.S.C. § 230 ("Section 230") and the First Amendment of the United States Constitution.

After review of the parties' submissions and hearing oral argument, Defendants' motion to dismiss is granted.  Even giving DeLima's complaint the most liberal reading, and crediting as true all non-conclusory factual allegations in that complaint, the court cannot draw the reasonable inference that Defendants are liable for the misconduct alleged.  DeLima's defamation and copyright claims are also barred by res judicata and the Section 230 immunity afforded to Defendants.  In light of this ruling, Defendants' motion to transfer and DeLima's motion for preliminary injunction (styled as a "motion to strike") are denied as moot.

## I.  <u>Applicable legal standard</u>

At the Rule 12(b)(6) stage, DeLima must state a claim to relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015).  This standard "demands that a party do more than suggest in conclusory terms the existence of questions of

fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013).  In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court may also consider judicially noticed documents, matters of public record, and documents introduced by the plaintiff in her objection to the motion to dismiss or concessions in that objection, without converting the 12(b)(6) motion into a motion for summary judgment.  See Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019); Greene v. Rhode Island, 398 F.3d 45, 49 (1st Cir. 2005).

Because DeLima is proceeding pro se, the court construes her complaint liberally.  See Erikson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations omitted) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").  Pro se status, however, "does not insulate a party from complying with procedural and substantive law. Even under a liberal construction, the complaint must adequately allege the elements of a claim with the requisite supporting facts." Chiras v. Associated Credit Servs., Inc., No. 12-10871-TSH, 2012 WL 3025093, at *1 n.1 (D. Mass. July 23, 2012) (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (internal citation and quotation marks omitted)).  And DeLima is no stranger to filing cases in this court as a pro se litigant.[4]

---

[4]See, e.g., DeLima v. YouTube, Inc., No. 1:17-cv-00733-PB (D.N.H. Dec. 21, 2017); Athens v. Walmart, No. 1:20-cv-00808-LM (D.N.H. Aug. 3, 2020).

## II.   **Background**

The court draws the following factual background from DeLima's First Amended

Complaint[5] and documents attached to Defendants' motions.  As part of their motions to dismiss

and/or transfer, Defendants asked the court to take judicial notice of pleadings and orders in a

prior, similar case involving DeLima and these defendants.[6]  DeLima has not meaningfully

objected to this request and the court accordingly grants it.  This background will include

information from these judicially noticed documents and the court will use that information to

analyze the pending motions.

DeLima's complaint contains no clear narrative and is difficult to follow.  It consists

mainly of legal conclusions that are not supported by any specific facts.  She nevertheless did her

best to answer the court's questions at oral argument, where she conducted herself with sincerity

and collegiality toward opposing counsel and the court.  Liberally construed, the amended

complaint appears to allege the following facts.  DeLima[7] is a resident of New Hampshire.  She

operates various accounts, profiles, or "channels" on YouTube.com[8] (which is owned by

Google) and Twitter, and also owns at least two website domains where she operates a blog

through Google's "Blogger" publishing service.[9]  DeLima has operated her YouTube account

---

[5] Doc. no. 5.

[6] See Defendants' Request for Judicial Notice (doc. no. 11).

[7] DeLima recently started addressing herself as "Natasha Athens" in documents filed in this matter.  For purposes of this order, the court will continue to address her as "DeLima."

[8] YouTube is an online video-sharing platform, where users can watch videos posted by others, or post their own videos.  A "channel" is a place where a user can post all of their content in one location and where other users can subscribe to view the creator's content and view it as soon as it is posted.

[9] First Amended Complaint (doc. no. 5), at ¶ 4.

and channels since at least 2012.[10]  She has developed a following of subscribers and viewers of the content she posts on these platforms and claims to earn revenue through her YouTube channels and blog.[11]

The gist of DeLima's complaint is that since 2018, Google has disconnected at least one of her domains, suppressed the "view" count on her other domain, "frozen" or taken down her YouTube channels and deleted subscribers from these channels, and has suspended or banned her from YouTube entirely.[12]  As for Twitter, DeLima similarly alleges that it has shut down her accounts at various times, "hacked" or removed her tweets, deleted notifications, and "shadow banned" her.[13]  DeLima alleges that Defendants took these measures based on the viewpoints or opinions she espouses on these platforms and Defendants' political bias against these viewpoints, and because Defendants are threatened by the popularity of her accounts.[14]  These actions – according to DeLima – have deprived her of new subscribers and the opportunity to earn additional revenue from the accounts, and have stripped her of the "virtual property rights" she claims to hold in the accounts.[15]

---

[10] Id. at ¶¶ 7, 12.

[11] Id. at ¶¶ 4-5.

[12] Id. at ¶¶ 4-6, 12; see also Omnibus Objection to Defendants' Motions (doc. no. 31), at 2.

[13] Doc. no. 5, at ¶¶ 8, 11.  Shadow banning is the act of blocking or partially blocking a user or their content from an online audience in a manner that is not readily apparent to the user.  The user believes they are posting content normally, when in reality other people cannot see the posted content.

[14] Id. at ¶¶ 4, 7, 13.

[15] Id. at ¶¶ 4, 6-7, 17-20.  DeLima uses the term "virtual property rights" frequently in her complaint, but does not define it.  Instead, she claims that the "ruling case" on virtual property rights – Hosseinzadeh v. Klein – establishes her legal rights in this alleged virtual property.  The Hosseinzadeh decision, however, does not contain the phrase "virtual property" or otherwise establish the rights DeLima seeks to assert in this case.  Hosseinzadeh v. Klein, 276 F. Supp. 3d

In December 2017, DeLima filed a similar lawsuit against the Defendants here and other defendants, which was docketed as case number 1:17-cv-00733-PB.  She filed an amended complaint in that prior lawsuit on August 17, 2018.[16]  On August 30, 2018, Judge Johnstone, as part of her preliminary review of DeLima's complaint, issued a Report and Recommendation that the entire suit be dismissed for failure to state a claim upon which relief could be granted.[17]  Over DeLima's objection, Judge Barbadoro approved Judge Johnstone's Report and Recommendation dismissing the suit and the court entered judgment against DeLima on October 11, 2018.[18]  DeLima unsuccessfully appealed these decisions to the First Circuit Court of Appeals and Supreme Court.[19]

As part of her recommendation to dismiss DeLima's prior suit, Judge Johnstone liberally construed her operative complaint as asserting the following claims against Google and Twitter:

1.  Violations of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), by failing to pay DeLima minimum wage;
2.  Embezzlement of money earned by DeLima on the Defendants' internet platforms as well as other unspecified criminal activity affecting DeLima's use of those platforms;
3.  Violations of DeLima's First Amendment right to free speech, and engaging in viewpoint discrimination by (1) censoring her content posted on Defendants' internet platforms; (2) denying her access to the Defendants' internet platforms; and (3) requiring that she agree to "Terms of Service," which allowed Defendants to curtail her free speech rights;
4.  As to Blogspot.com and Google, violations of DeLima's civil rights and engaging in the "crime of cyberbullying" by allowing someone to reuse a domain name she purchased, but ceased to use, to (1) defame, libel, slander, harass, bully, demeans,

---

34 (S.D.N.Y. 2017) (finding that critical commentary about a creative video posted on YouTube is subject to fair use defense for copyright infringement claims).

[16] Doc. no. 11-1.

[17] Doc. no. 11-2.

[18] Doc. no. 11-3.

[19] Doc. nos. 11-4 and 11-5.

ridicule, and lie about her, and (2) infringe upon her copyright in the domain name;

5. Forcing DeLima to consent to "Terms of Service," and changes to those Terms, in violation of Federal laws, civil rights, and "virtual property rights"; and

6. Stalking DeLima, placing false strikes on her accounts, closing or shuttering her accounts, locking her out of her accounts, denying DeLima the use of her "virtual property," and attempting to stop people from viewing, accessing, or following her accounts, including by engaging in "shadowbanning" and manipulating data relating to her accounts.[20]

On September 17, 2019, while her petition for a writ of certiorari before the United States Supreme Court was still pending in her prior suit, DeLima filed this lawsuit.[21] DeLima successfully moved to amend her complaint and filed the operative First Amended Complaint on June 2, 2020. By order dated June 29, 2020, Judge Johnstone directed the United States Marshal's office to serve Defendants pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(h).[22] It appears that Google was served, but Twitter was not. Nevertheless, counsel for both defendants entered an appearance by filing the motion to dismiss, request for judicial notice, and motion to transfer currently pending before the court.[23]

## III.  **Analysis**

Defendants move to dismiss on three principal grounds. First, they argue that DeLima's current claims are barred by res judicata as a result of the court's final judgment in her prior lawsuit. Second, they argue that if res judicata does not bar the claims, DeLima's complaint nevertheless fails to state a claim because the alleged claims are not "legally viable" and

---

[20] Doc. no. 11-2, at 6-7.

[21] Complaint (doc. no. 1).

[22] Doc. no. 6.

[23] Doc. nos. 10-12; see also Doc. no. 13 (Twitter's Disclosure Statement).

insufficiently supported by facts.  Third and finally, the Defendants argue that because DeLima's claims arise out of the Defendants' exercise of editorial discretion, they are barred by the Communications Decency Act (47 U.S.C. § 230) and the First Amendment to the United States Constitution.[24]  To the extent any of DeLima's claims survive their motion to dismiss, Defendants move to transfer those claims to the United States District Court for the Northern District of California based on mandatory forum selection clauses in Defendants' terms of service.[25]

As detailed below, while res judicata does not bar all of DeLima's claims, Defendants' motion to dismiss is granted for the additional reasons advanced by Defendants.  Because the court is dismissing DeLima's complaint, it need not rule on Defendants' motion to transfer and that motion is denied as moot.

### A.      Res Judicata

"Federal law determines whether an earlier judgment, rendered in federal court, bars the maintenance of a subsequent federal court action."  In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).  Defendants must show three things to establish a res judicata defense: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions."  Id.  There is no dispute that Defendants satisfy the first and third elements.  The closer question is whether they satisfy the second element.

---

[24] See Memo. of Law in Supp. of Motion to Dismiss (doc. no. 10-1), at 2-3.

[25] See Motion to Transfer (doc. no. 12-1), at 2-3.

Defendants do not analyze res judicata on a claim-by-claim basis and instead ask for a blanket ruling that all of DeLima's claims are barred.  To find sufficient identicality between the causes of action in the earlier and later suits, the court need "not focus on the labels or sources for the plaintiff's causes of action but instead consider[] whether the underlying factual bases for the causes are related in time, space, origin or motivation."  Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011) (quotation omitted).  The "required relationship" will be found if both sets of claims "derive from a common nucleus of operative facts."  Id.; see also Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991) (to find sufficient identity between two causes of action, the court asks whether they "were sufficiently related, that is, if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong").

In their motion, Defendants adeptly point out the many similarities between the allegations in DeLima's prior complaint and her current complaint.  They argue the only "new" additions are a claim of emotional distress and passing references to the "Sherman Act,"[26] but that is not an accurate reading of DeLima's new complaint.  DeLima's current suit focuses on Defendants' actions in a different timeframe from her prior suit.  While the old suit arose from events in 2017 and earlier, her current suit focuses on 2018-2020 and the revenues allegedly owed to her from this more-recent period.  This time distinction – which Defendants largely ignore in their papers – matters for purposes of the res judicata analysis and suggests that the old claims are not sufficiently related in time, space, or origin to DeLima's current suit.[27]  See, e.g.,

---

[26] Doc. no. 10-1, at 12.

[27] In their reply, Defendants argue that DeLima raised allegations about different time periods for the first time in her objection to the motion to dismiss and that a party cannot amend their complaint through later allegations in an objection.  See Doc. no. 34, at 3.  DeLima's complaint, however, discusses conduct from "2018 – present" as well as in August and September 2019,

McCoy v. Michigan, 369 Fed. Appx. 646, 651 (6th Cir. 2010) (no transactional relatedness between the state court action and the subsequent federal litigation where the events in the state court litigation were "far removed temporally" from the later case); Figueroa v. Wall, No. CIVA 05-185 S, 2007 WL 60940, at *4 (D.R.I. Jan. 4, 2007) ("While some claims and factual circumstances in Figueroa I are similar to the instant action, the instant action appears to pertain to different time period. Thus, Figueroa I is not sufficiently related in time, space and origin to the instant action."); Darney v. Dragon Products Co., LLC, 592 F.Supp.2d 180, 184 (D. Me. 2009) (holding that res judicata did not bar similar suit between same parties where "Plaintiffs pleaded only pre-November 12, 2004 causes of action in Darney I and only post-November 12, 2004 causes of action in Darney II, which constitutes the type of subsequent claim not barred by res judicata); M.C.G. v. Hillsborough Cty. Sch. Bd., 927 So. 2d 224, 227 (Fla. Dist. Ct. App. 2006) ("The doctrine of res judicata . . . is not applicable where the claims in the two cases concern different periods of time.").

DeLima's current suit is also based on different alleged wrongs that occurred after August 17, 2018 (the date she filed her amended complaint in the prior action), such as banning her from YouTube entirely, shutting down her YouTube channels, and locking her out of her Twitter or YouTube accounts.  "Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same course of conduct."  Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 383 (2d Cir. 2003).

---

and her objection and surreply appear to expand on those allegations.  Doc. No. 5, at ¶¶ 5, 11. Affording DeLima's filings a liberal construction, the court therefore does not regard the allegations in her objection and surreply as to the time period of the alleged wrongs as "new" and will consider them as part of the res judicata analysis.

Although the First Circuit Court of Appeals has not expressly weighed in on this question, at least four other Circuit Courts "have determined that federal res judicata law does not bar claims based on facts that occurred after the filing of the first lawsuit." Welsh v. Fort Bend Indep. Sch. Dist., 860 F.3d 762, 767 n.6 (5th Cir. 2017) (citing decisions from the Second, Eighth, Eleventh, and Federal Circuits). "The scope of litigation is framed by the complaint at the time it is filed. The rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated." Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir. 1992) (quotation omitted); see also Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369–70 (2d Cir.1997) (Plaintiff "was under no obligation to amend its complaint" and "res judicata does not bar litigation of claims arising from transactions which occurred after the [original] action was brought.").

Here, while there is some overlap between the core allegations in DeLima's prior and current lawsuits, that overlap is not "so substantial" as to overcome the different alleged wrongs (from a subsequent time period) that she claims in this suit. Cf. Pram Nguyen ex rel. U.S. v. City of Cleveland, 534 Fed. Appx. 445, 449 (6th Cir. 2013) (unpub.) ("Even allegations covering different time periods may still be subject to res judicata applicability if there is substantial overlap."). The court therefore cannot broadly rule – as Defendants request – that all of DeLima's claims in this case are barred by res judicata. If specific claims are barred by res judicata, the court will address that issue in its analysis of each claim below.

**B.      The merits**

**1.      Defining the claims**

DeLima's claims mostly consist of unsupported legal conclusions or bald statements that "laws" have been violated.  Although DeLima lists four "causes of action" in her complaint, they are not distinct and instead combine several different claims.  Under the most charitable reading, DeLima alleges that Defendants moderated her content, either by removing posts, or restricting or deleting her accounts entirely, and that these decisions: (1) violated DeLima's civil rights; (2) violated her First Amendment rights; (3) defamed her; (4) violated her "right to payment"; (5) violated the Sherman Antitrust Act; (6) violated copyright laws and fair use "laws"; and (7) intentionally inflicted emotional distress upon her.[28]  The court will address the merits of each count in turn.

        *a)      Civil Rights*

DeLima does not specify what civil rights laws or anti-discrimination laws Defendants have violated or whether she has a right to sue under those laws.  Nor does she allege how Defendants could have violated such laws if they existed.  Defendants are private companies and not state actors, and thus cannot be held liable under 42 U.S.C. § 1983, absent factual allegations that could lead to a finding of state action.  DeLima's complaint is devoid of any allegation that could transform either defendant into a state actor for purposes of a § 1983 claim.  DeLima also fails to articulate what other "anti-discrimination" laws Defendants may have violated, or are even subject to, for their moderation of content posted on their platforms.  While she appears to

---

[28] In her surreply, DeLima appears to narrow her claims to "a violation of the Sherman Act, Breach of Contract, and 100% violation of the 1st Amendment."  Doc. no. 35, at 5.  The court does not construe this statement as a waiver or concession as to her other claims and will analyze the merits of all the potential claims asserted in DeLima's First Amended Complaint.

reference Title VII of the Civil Rights Act[29] in her complaint, that statute has no application in this context, as DeLima was neither a job applicant nor employee of either Defendant.  DeLima has thus failed to state a claim for violations of § 1983 or any other civil rights or anti-discrimination laws and Defendants' motion to dismiss these claims is granted.

> b) *First Amendment*

DeLima repeatedly alleges in her complaint that Defendants' have violated the First Amendment and discriminated against her based on her protected speech and viewpoint.  Yet she acknowledges that Defendants are private companies and not government entities, which is fatal to her claim.  "[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."  Hudgens v. NLRB, 424 U.S. 507, 513 (1976). "[E]very First Amendment claim thus requires state action in some sense," and DeLima has failed to allege any state action on the part of Defendants that could give rise to an alleged violation of her free speech rights.  McGuire v. Reilly, 386 F.3d 45, 60 (1st Cir. 2004).  She accordingly has failed to state a claim for violation of the First Amendment and Defendants' motion to dismiss this claim is granted.

> c) *Defamation*

In her complaint, DeLima summarily alleges that Defendants "defamed" her, committed "libel" and violated 28 U.S.C. § 4101, without providing any factual support for these conclusions.  Aside from being insufficiently supported by facts, DeLima's defamation claim is not legally viable for several reasons.  First, the cited statute – 28 U.S.C. § 4101 – merely defines the term "defamation" for purposes of a statutory scheme that allows United States courts to recognize or enforce foreign judgments for defamation under certain circumstances.  DeLima has

---

[29] She refers to the statute as "Title V11."

not alleged that she obtained a foreign judgment for defamation against either defendant, and the statute does not provide a separate cause of action for defamation.  To the extent DeLima's defamation claim is based on § 4101, it therefore must be dismissed.

Second, DeLima fails to allege that Defendants made a defamatory statement or communicated defamatory materials in writing, which is fatal to any common law libel or slander claim.  The act of a service provider disconnecting a social media account or domain name, or moderating or deleting content on these accounts, is not a "statement" for purposes of defamation law, and so DeLima's defamation claim is dismissed for this additional reason.

Finally, to the extent DeLima is arguing that Defendants should be held responsible for allegedly defamatory content posted by a third party on one of her domains, that aspect of her claim is barred by res judicata because it arises from the same nucleus of operative facts as her prior lawsuit[30] and is also barred by the immunity provision of the Communications Decency Act.  See 47 U.S.C. § 230 (c) (1) (providing, in part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider").  This section of the CDA has been interpreted as affording immunity to Defendants "for the publication of defamatory content prepared or posted by others."  Pagan v. Google Corp., No. 16-cv-401-JD, 2016 WL 7187645, at *1 (D.N.H. Nov. 15, 2016) (DiClerico, J.); see also Report & Recommendation (doc. no. 11-2) at 11.  For all of these reasons, the court grants Defendants' motion to dismiss DeLima's defamation claims.

---

[30] See Report & Recommendation (doc. no. 11-2), at 10-11.

d)    *Sherman Act*

DeLima passingly references the Sherman Act and other "Antitrust Laws" in her

complaint, but does not specifically allege how Defendants have violated these laws or otherwise

engaged in anti-competitive behavior.  Even for a pro se litigant, simply providing a hyperlink to

an online version of 15 U.S.C. § 1 and baldly concluding that Defendants violated the Sherman

Act and other "Antitrust Laws" is not sufficient to state an antitrust claim.  See Maldonado v.

Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice.").  DeLima provides no factual

allegations of an illegal restraint of trade, anti-competitive behavior such as market allocation

agreements or price fixing, or unlawful monopolization or attempts to monopolize, to support an

antitrust claim.  See In re Lantus Direct Purchased Antitrust Litig., 950 F.3d 1, 7 (1st Cir. 2020)

(discussing elements of a monopolization claim).  The court therefore dismisses DeLima's

Sherman Act and other antitrust claims.

e)    *Copyright*

Like her Sherman Act claim, DeLima also loosely references a violation of "Fair Use"

laws" and cites the Copyright Act, 17 U.S.C. § 101 as part of her summary of claims.  To the

extent DeLima is asserting a copyright infringement claim, any such claim is barred by res

judicata as it arises from the same nucleus of operative facts as her previously dismissed

copyright infringement claim in the prior lawsuit.  See Report and Recommendation (doc. no.

11-2) at 12.  A copyright infringement claim is nevertheless unsupportable as plead here because

DeLima does not allege what copyright she is seeking to enforce and more importantly, whether

she has registered that copyright, which is a "precondition to filing a copyright infringement

claim."  Latin Am. Music Co. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013).  Nor is

a violation of "fair use laws" a viable claim, as "fair use" is a defense to a copyright or trademark

infringement claim and not a basis for an affirmative claim.  For these reasons, the court dismisses DeLima's copyright infringement claim and claim for violations of fair use laws.

### f) *Emotional Distress*

DeLima also asserts that she is entitled to damages for intentional infliction of emotional distress as a result of Defendants' actions.  Her sole factual allegation in support of this claim is that Defendants' actions have "create[d] an immeasurable amount of distress."[31]  This is plainly insufficient to meet the "high bar" of establishing a claim for intentional infliction of emotional distress under New Hampshire law.  DeLima has failed to identify any conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Moss v. Camp Pemigewassett, Inc., 312 F. 3d 503, 511 (1st Cir. 2002).  Under the facts and circumstances alleged here, private publisher content, such as moderating content, removing content, and choosing advertisers and advertisements for their platforms, does not meet this standard. DeLima likewise fails to allege facts to establish how Defendants intentionally or recklessly caused the alleged distress or how the distress is "severe," which are required elements of an intentional infliction of emotional distress claim.  Tessier v. Rockefeller, 162 N.H. 324, 341 (2011).  Defendants' motion to dismiss this claim is therefore granted.

### g) *Right to Payment against Google*

Finally, DeLima alleges that Google owes her compensation as a result of various acts, including disconnecting one of her domains (the "Nothing but the truth" domain), keeping monetization she earned through another domain (the "natasha news" domain), suspending or

---

[31] Doc. no. 5, at ¶ 9.

removing her from YouTube, manipulating or suppressing the view count on her YouTube channels, and failing to pay her "all of her earnings" in 2018, 2019, and 2020 from these platforms.  In the prior suit, DeLima argued that Google's failure to pay violated the Fair Labor Standards Act.  She does not make a similar claim here, and does not adequately explain the legal basis for her alleged right to payment in her complaint.  In her objection and surreply, however, DeLima clarifies that she is in fact asserting a breach of contract claim against Google, but provides little detail as to the specific terms of the alleged contract, whether they include payment terms, and how Google allegedly breached these terms.[32]  She also references Google's "terms of service" in her complaint, but those documents do not contain payment terms or otherwise afford DeLima a right to payment.[33]

Instead, DeLima relies on screen shots from her blog showing images of the alleged agreement and stray references to other "terms" of the agreement,[34] such as "68% payment due" and "monetization statistics."[35]  She does not explain, however, how these alleged terms confer upon her a right to payment from Google or how Google has violated these terms.  When pressed at oral argument to identify the contract with Google she alleges was breached, DeLima

---

[32] DeLima does not similarly argue that she has a contract with Twitter that would entitle her to payment and has not sufficiently alleged any other valid legal basis for payment from Twitter. Thus, to the extent DeLima's complaint includes a "right to payment" claim against Twitter, any such claim is dismissed with prejudice.

[33] See Doc. nos. 12-3 (Google TOS) and 12-4 (YouTube TOS).

[34] The screen shots are from a link to DeLima's publicly available blog.  See https://natashanh2024.blogspot.com/2020/05/lawsuit-against-google-youtube-twitter.html (last accessed Jan. 25, 2021).  One screen capture shows her "Account Information" with Google and lists her "active products" with Google, as of December 20, 2020, as Content (68% publisher revenue share), Content Host, and YouTube Host.

[35] Doc. no. 35, at 4.

referenced a "monetization contract" that allegedly requires Google to pay her 68% of revenue earned based on the number of views that videos posted on her YouTube channels accumulate. She alleges that Google breached this contract by improperly suppressing her view count and by suspending her channels or removing her from YouTube entirely. Google's counsel was unable to identify this alleged contract at oral argument, and, although counsel did not deny that users may monetize their YouTube accounts, he could not explain to the court how his client's users earn revenue through content posted on Google-owned platforms.

Even after generously construing DeLima's operative complaint in her favor, the court cannot discern a viable contract claim from the allegations in that pleading. And the court cannot decide this motion based on new facts alleged in DeLima's objection and surreply. See Hall v. Bank .v Am., N.A., 2014 WL 2608119 (D.N.H. June 11, 2014) (DiClerico, J.); Schneider v. California Dept of Corrections, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (court may not look to additional facts alleged in opposition to motion to dismiss when deciding 12(b)(6) motion); see also 2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."). On this limited record alone, DeLima fails to state a contract claim against Google.

With the proper factual support, including a more-precise description of the alleged contract at issue, DeLima may be able to assert a contract claim that survives the Rule 12(b) stage. The court's research uncovered at least one publicly available agreement between Google and its users that confers a right of payment on users of its "AdSense" account service. See Google AdSense Online Terms of Service, available at https://www.google.com/adsense/tc/2018/UnitedStatesOfAmerica.html (last accessed Jan. 25,

2021).[36]  While this may not be the operative agreement between DeLima and Google, the court cannot rule that possibility out and thus cannot dismiss DeLima's contract claim with prejudice and without leave to amend.[37]  Any future claim arising out of the AdSense or similar agreement for Google-owned services, however, must be brought in the Northern District of California as a result of the presumptively enforceable and mandatory forum selection clause in that agreement and Google and YouTube's general terms of service.  Id. at § 15; see also Doc. Nos. 12-3, 12-4. Accordingly, DeLima's contract claim is dismissed without prejudice and with leave to file an amended complaint in the Northern District of California for contract or quasi-contract claims arising out of Google's actions after August 17, 2018.[38]

### C.    Motion to Transfer

In light of the court's ruling on Defendants' motion to dismiss, their alternative motion to transfer is denied as moot.

---

[36] See also Free Range Content, Inc. v. Google Inc., No. 14-CV-02329-BLF, 2015 WL 5029480, at *1 (N.D. Cal. Aug. 25, 2015) ("Google's AdSense program allows a website operator (or, 'publisher') to host advertising on its own website in exchange for a percentage of the advertising revenue that Google receives from advertisers to place and run those ads.  A publisher that wants to participate in the program agrees to abide by the 'Google AdSense Online Terms of Service' ('TOS') and 'Google AdSense Online Standard Terms and Conditions' ('Agreement').  These contracts set forth a variety of requirements and prohibitions regarding, among other things, the content of a publisher's website, placement of ads on the website, and methods of generating advertising traffic.") (citations omitted).

[37] The court similarly cannot rule as a matter of law that any contract claim would be barred by § 230 of the CDA.  See Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1101-02 (9th Cir. 2009) (holding that § 230 does not provide blanket immunity to service providers against promissory estoppel or breach of contract claims).

[38] Any contract claim arising from Google's actions prior to August 17, 2018 – the date of DeLima's operative complaint in her first lawsuit – would be barred by res judicata because they arise from the same nucleus of operative facts as those alleged in the prior lawsuit.

### D.      DeLima's "Motion to Strike"

The other pending motion in this matter is DeLima's "motion to strike (and quash) illegal termination of alphabet letter Q accounts," (doc. no. 9) which, fairly construed, is a motion for preliminary injunction.  Because the court is dismissing DeLima's claims, it necessarily denies her injunction request as moot.

## IV.   <u>Conclusion</u>

For the reasons set forth above, Defendants' motion to dismiss[39] and request for judicial notice[40] are GRANTED.  All claims noted above are dismissed with prejudice because DeLima has already had one opportunity to amend and further amendments would be futile, with the exception of DeLima's breach of contract claim against Google, which is dismissed without prejudice and with leave to amend and re-file in the Northern District of California.  Defendants' motion to transfer[41] and DeLima's motion to strike[42] are DENIED as moot.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:  January 28, 2021

---

[39] Doc. no. 10.

[40] Doc. no. 11.

[41] Doc. no. 12.

[42] Doc. no. 9.

cc:     Natasha DeLima, pro se
        Jonathan Eck, Esq.
        Ryan Thomas Mrazik, Esq.